AARON D. FORD
 Attorney General
DOUGLAS R. RANDS, Bar No. 3572
 Senior Deputy Attorney General
State of Nevada
100 N. Carson Street
Carson City, NV  89701-4717
Tel:  (775) 684-1150
E-mail:  drands@ag.nv.gov

*Attorneys for Defendants*
*Kim Adamson, Romeo Aranas,*
*David Bequette, , James Dzurenda,*
*Aaron Ford, Tim Garrett, David Greene,*
*Dana Marks, Michael Minev,*
*Martin Naughton, Donald Poag, Sarah Rushton,*
*State of Nevada, ex re. Nevada Department of*
*Corrections, and Board of Prison Commissioners*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JAMEE DEIRDRE HUNDLEY, aka JAMES DERRICK HUNDLEY, | Case No.  3:19-cv-00458-ART-CSD |
| Plaintiff, | |
| v. | **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE** |
| STATE OF NEVADA ex. Rel. BOARD OF PRISON COMMISSIONERS, et al. | **ECF No. 119** |
| Defendants. | |

Defendants, Kim Adamson, Romeo Aranas, David Bequette, James Dzurenda, Aaron Ford, Tim Garrett, David Greene, Dana Marks, Michael Minev, Martin Naughton, Donald Poag, Sarah Rushton, State of Nevada, ex re. Nevada Department of Corrections, and Board of Prison Commissioners as a board, not individually, by and through counsel, Aaron D. Ford, Attorney General of the State of Nevada, and Douglas R. Rands, Senior Deputy Attorney General, hereby respond to Plaintiff's Motion for Order to Show Cause (ECF No. 119).

///

///

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   FACTUAL HISTORY

This case is a civil rights action pursuant to 42 U.S.C. §1983.  (ECF No. 30 at 1). Plaintiff, Jamee Deirdre Hundley (Hundley), is an inmate in the lawful custody of the Nevada Department of Corrections (NDOC).  *Id.*  Hundley sues various Defendants and alleges they violated her rights under the U.S. Constitution.  *Id.*

Plaintiff Jamee Deirdre Hundley ("Hundley"), an inmate in the custody of the Nevada Department of Corrections (the "Department"), demands gender affirming surgery for alleged gender dysphoria. *Id.* As indicated in Hundley's second amended complaint, Hundley previously litigated issues related to Hundley's alleged gender dysphoria. *Id.* Hundley has subsequently filed a Third Amended Complaint.  As a result of that prior litigation, the Department agreed to provide Hundley with estrogen hormone therapy, but the Department did not agree to provide Hundley with surgery. The hormone therapy has not proceeded as quickly as Hundley would like. The progression has been gradual because prison physicians took reasonable steps to mitigate the health risks that are attendant to estrogen hormone therapy when it is used to promote gender transition. Hundley filed suit alleging five causes of action, all of which relate either directly or indirectly to Hundley's course of treatment for alleged gender dysphoria.

This Court issued an order (ECF No. 116) essentially ordering that Ms. Hundley's hormone dosages be increased, and that she be referred to a surgeon to be evaluated for gender affirming surgery. ECF No. 116. Ms. Hundley argues that the Defendants have willfully violated this Court's order and should, therefore, be sanctioned. (ECF No. 119) The Defendants disagree with the allegation.  However, rather than attempting to go through the allegations bit by bit, the Defendants will document and show the steps that they have taken to comply with the order.

### II.   MEDICAL TREATMENT AND REFERRALS

When the Court issued the order, (ECF No. 116) counsel did forward that order to his clients.  As stated by Ms. Hundley in her motion, Dr. Marks had some ethical and

medical concerns and differences with the Court order.  However, Dr. Marks did increase the dosage from 4 mg. to 6 mg.  (Exhibit 1) When the levels did not get into the level the Court ordered, Dr. Marks was not willing to increase the dosage further. When it became clear that Dr. Marks was not willing to violate what he believed was his duty to his patient, Counsel enlisted the assistance of Dr. Kenneth Williams, the medical director for NDOC.  Dr. Williams increased the dosage of the estrogen substitute.  (Declaration of Sanabia)  He also recommended that Ms. Hundley be seen by an Endocrinologist to evaluate the treatment offered to Ms. Hundley.  (Exhibit 2).  The request was originally denied by Reno Endocrinology (*Id.* at p. 3)  However, the Defendants persisted and an appointment was scheduled for November 5, 2025, the first date available with the provider. (*Id.* at 3)  Ms. Hundley was seen by an endocrinologist- Dr. Gonzales.  (Exhibit 3) Dr. Gonzales recommended that the estradiol treatment continue at 8 mg daily and that oral progesterone be added to the regimen.  (Exhibit 3, p.4 )  Dr. Gonzales also requested a return appointment in 6 months. (*Id.*) He indicated that he would check estradiol levels in 6 months.  Therefore, there is no indication that the NDOC is willfully violating this Court's orders.  The Endocrinologist indicated that the levels should be checked in 6 months from November 5, 2025.

The NDOC providers approved the treatment and the progesterone was approved. (See Declaration of Ms. Sanabia)  Ms. Sanabia assumed care of Ms. Hundley following Dr. Marks.  (*Id.*)  The dosage of estradiol went from 4 mg to 6 mg under Dr. Marks on September 9, 2025.  Then Dr. Williams increased the dosage to 8 mg.  (Exhibit 4).  The latest lab test indicated that the estradiol levels had increased to 112 pg/ml on November 14, 2025 from 44.9 pg/ml on September 9, 2025.  (Exhibit 5) (Declaration of Sanabia) According to Ms. Sanabia, APRN, the current level of estradiol is within the current guidelines for transgender care. (*Id.*)  Additionally, the addition of the progesterone, as recommended by the outside consultant, should stabilize the hormone levels.  (*Id.*) Ms. Hundley will be followed up with the Endocrinologist in 6 months and will have her

///

hormone levels checked in three months.  (*Id.*)   Therefore, Ms. Hundley is receiving hormone therapy and is being treated by providers to monitor the levels.

As to the allegation that Ms. Hundley has not been referred to a surgeon to evaluate gender affirming surgery, this is not for lack of trying.  The referral was sent on October 8, 2025 to John Brosious of Western Surgical group.  (Exhibit 6)  The visit was authorized by the NDOC.  (Exhibit 6 p.4)  Dr. Brosius is known as the preeminent surgeon in Nevada for this type of surgery.  Unfortunately, Dr. Brosious was not willing to take an inmate as a patient and declined the referral.  (Declaration of Williams)  The NDOC also sent a referral to Vegas Plastic Surgery, who does not see inmates.  (*Id.*)  The referral was also sent to UNLV General Surgery.  However, the UNLV group has not yet responded to the request.  The NDOC is following up with UNLV.  (Declaration of Williams)  Therefore, the NDOC has made an attempt to place Ms. Hundley.  However, her status as an offender is making this difficult, especially since this type of procedure is considered elective and non-life threatening if delayed.  The NDOC cannot force providers to provide services to the offenders.

## III.    LEGAL ARGUMENT

A court may hold a party in civil contempt for violating a court order. *See United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999).  Civil contempt sanctions serve "to coerce obedience to a court order, or to compensate the party pursing the contempt action for injuries resulting from the contemptuous behavior." *CFTC v. Emerald Worldwide Holdings*, No. 2:03-cv-8339, 2004 WL 3186580, at \*2 (C.D. Cal. July 29, 2004) (quoting *General Signal v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986)). In order to obtain contempt sanctions, the moving party must demonstrate by clear and convincing evidence that the other party violated a court order. *See Ayres*, 166 F.3d at 994. Once the moving party establishes the violation, the burden shifts to the alleged contemnor to produce evidence justifying his non-compliance. *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1241 (9th Cir. 1999) (citing *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n. 9 (9th Cir. 1992)); *Emerald Worldwide Holdings*, 2004 WL 3186580, at \*2. The "party

4

petitioning the court for civil contempt does not have to establish that the respondent intended to violate, or willfully violated, the order." *Emerald Worldwide Holdings, Inc.,* 2004 WL 3186580, at *2 (citing *NLRB v. Ironworks Local 433*, 169 F.3d 1217, 1222 (9th Cir. 1999)).

To sustain an Eighth Amendment claim based on deficient medical treatment, a Plaintiff must show that the defendants were deliberately indifferent to the Plaintiff's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Deliberate indifference requires proof of two elements: (1) a serious medical need and (2) the defendant's deliberate indifference in response. *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997). The second element requires proof that the defendants knew of the excessive risk to an inmate's health and disregarded the risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A difference of opinion between an inmate and medical staff as to the appropriate medical treatment for his condition is insufficient to establish deliberate indifference as a matter of law. *See Toguchi v. Chung,* 391 F.3d 1051, 1058 (9th Cir. 2004). Likewise, a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *Toguchi,* 391 F.3d at 1059–60. "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health.'" *Toguchi,* 391 F.3d at 1058.

Other courts have held likewise as the Eleventh Circuit has held that "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Harris v Thigpen*, 941 F.2d 1495 at 1505 (11th Cir. 1991). Similarly, the Tenth Circuit has "consistently held that prison officials do not act with deliberate

indifference when they provide medical treatment even if it is subpar or different from what the inmate wants." *Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018)  In addition, the First Circuit has noted, en banc, that the Eight Amendment "does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing. "*Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc) ; *see also King v Calderwood*, 2016 WL 4771065 (D. Nev. 2016) aff'd sub nom. *King v. Cox*, 692 F. App'x 398 (9th Cir. 2017) (Judge Navarro granting summary judgment finding no evidence of deliberate indifference on the part of NDOC physicians for failure to treat an inmate's hepatitis condition with a specific medication).

Here, Ms. Hundley has been receiving constant care from NDOC staff in alignment with the Court's order. Additionally, the delays in care have been with outside providers, whom NDOC does not control. Thus, sanctions are not warranted here.

## IV.    CONCLUSION

Ms. Hundley is receiving care for her gender dysphoria condition.  It may not be a fast as she would like, however, she is receiving care.  The hormone level has increased to levels over 100 pg/ml.  An appointment for outside consultants will take place in 6 months, as requested by the provider.  The NDOC is attempting to find a surgeon willing to accept offenders as patients.  Therefore, respectfully, this is a difference of opinion as to the timing of the treatment.  The NDOC has not refused to follow this Court's order.  Therefore, sanctions are not warranted.

DATED this 4th day of December 2025.

AARON D. FORD
Attorney General


By:    */s/ Douglas R. Rands*
DOUGLAS R. RANDS, Bar No. 3572
Senior Deputy Attorney General

*Attorneys for Defendants*

6

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on December 4, 2025, I electronically filed the foregoing, **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE ECF No. 119**, via this Court's electronic filing system.   Parties that are registered with this Court's electronic filing system will be served electronically. For those parties not registered, service was made by depositing a copy for mailing in the United States Mail, first-class postage prepaid, addressed to the following:

Margaret A. McLetchie, Esq.
Leo S. Wolpert, Esq.
McLetchie Law
602 South Tenth Street
Las Vegas, NV 89101

/s/ Tammy Steele
An employee of the Office
of the Attorney General

7