MARGARET A. MCLETCHIE, Nevada Bar No. 10931
LEO S. WOLPERT, Nevada Bar No. 12658
**MCLETCHIE LAW**
602 South Tenth Street
Las Vegas, NV 89101
Telephone: (702) 728-5300; Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Plaintiff Jamee Deirdre Hundley*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JAMEE DEIRDRE HUNDLEY, aka,
JAMES DERRICK HUNDLEY,

        Plaintiff,

        vs.

STATE OF NEVADA ex. rel. BOARD OF
PRISON COMMISSIONERS; STATE OF
NEVADA ex. rel. NEVADA
DEPARTMENT OF CORRECTIONS;
JOSEPH LOMBARDO, in his official
capacity; AARON FORD, in his official
capacity; CISCO AGUILAR, in his official
capacity; DAVID RIVAS, in his official
capacity; DAVID GREENE, in his official
capacity; JAMES DZURENDA, in his
official and individual capacities; TIM
GARRETT, in his official capacity;
ROMEO ARANAS, in his individual
capacity; MICHAEL MINEV, in his
individual capacity; DAVID BEQUETTE,
in his individual capacity; RUSSELLE
DONNELLY, in her individual capacity;
DONALD POAG, in his individual
capacity; MARTIN NAUGHTON, in his
individual capacity; KIM ADAMSON, in
his individual capacity; SARAH
RUSHTON, in her individual capacity,
DANA MARKS, in his individual
capacity, DOES I – X,

        Defendants.

**Case. No.: 3:19-cv-00458-ART-CSD**

**PLAINTIFF'S REPLY IN
SUPPORT OF MOTION FOR AN
ORDER TO SHOW CAUSE AS TO
WHY DEFENDANTS SHOULD
NOT BE HELD IN CONTEMPT**

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

Plaintiff JAMEE DEIRDRE HUNDLEY ("Ms. Hundley" or "Plaintiff"), an individual, by and through her counsel of record, hereby replies in support of her Motion for an Order to Show Cause as to why Defendants should not be held in contempt for failure to comply with this Court's August 15, 2025, Order granting, in part, Ms. Hundley's Motion for Preliminary Injunction. (ECF No. 116.)

This Reply is based on all pleadings and papers on file, the Memorandum of Points and Authorities attached and exhibits hereto, and any further argument and evidence as may be presented at hearing.

DATED this the 11th day of December, 2025.

/s/ Leo S. Wolpert
Margaret A. McLetchie, Nevada Bar No. 10931
Leo S. Wolpert, Nevada Bar No. 12658
602 South Tenth Street
Las Vegas, NV 89101
Telephone: (702) 728-5300; Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Plaintiff Jamee Deirdre Hundley*

ii

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants' Response in Opposition to Plaintiff Deirdre Hundley's Motion for Order to Show Cause (ECF No. 120) does not meaningfully contest Ms. Hundley's contention that sanctions are warranted for their failure to comply with the Preliminary Injunction. (ECF No. 116.) Defendants' Response concedes that Defendant Dana Marks violated this Court's Preliminary Injunction by refusing to adequately raise Ms. Hundley's estradiol dosages. As this definitionally exceeds the standard[1] for proving contempt, this Court should proceed to assessing the award Ms. Hundley is due for Dr. Marks' contumacious conduct.[2] More concerning, even though Dr. Marks is no longer employed at LCC, Defendants' Response indicates an intent to continue their refusal to raise Ms. Hundley's estradiol dosages to increase her blood estradiol level to the medically necessary and court-mandated level of 150-300 pg/mL. Defendants' effort to relitigate what blood estradiol levels are appropriate for Ms. Hundley by (again) mischaracterizing[3] this dispute as a mere "difference of opinion" not only fails, but demonstrates Defendants' ongoing deliberate indifference to Ms. Hundley's serious medical needs.

NDOC has also violated the Preliminary Injunction's mandate to provide Ms. Hundley with "a referral to see an outside surgeon for evaluation for gender confirming

---

[1] *See Picozzi v. Nevada*, No. 2:20-CV-00518-RFB-MDC, 2024 WL 4349453, at *2 (D. Nev. Sept. 29, 2024) (citation omitted) ("To establish a *prima facie* case of civil contempt, the moving party must show by clear and convincing evidence that the defendant (1) violated a court order, (2) beyond substantial compliance, and (3) not based on a good faith and reasonable interpretation of the order.").

[2] *See Picozzi*, 2024 WL 4349453, *6-9 (after *pro se* inmate established NDOC officials were in contempt of TRO by failing to accommodate his religious beliefs by providing him meatless meals, the court proceeded to determine who would be sanctioned and in what amount, including attorney's fees and costs).

[3] *See, e.g.* ECF No. 120, p. 5:14-16; ECF No. 120-2, ¶ 9 (APRN Sanaba states—despite the Court's order mandating Ms. Hundley achieve a blood estradiol floor of 150 pg/mL—that current "guidelines for gender affirming hormone therapy recommend keeping estradiol levels for transgender women at the level similar to biological females, but between 100 and 200 pg/mL is a typical goal.")

1

surgery." (ECF No. 116, p. 23:10-11.) Despite not previously disclosing this information to Plaintiff after multiple requests, NDOC now claims it has made unsuccessful inquiries to three surgical centers regarding referrals. (ECF No. 120, p. 4:3-15.) Not only have Defendants failed to communicate about these efforts with Ms. Hundley—which evidences recalcitrance—Defendants have not provided any reasons for why they have not sought out referrals from more than three surgeons, particularly when there are many GCS providers in Northern California who may be willing to perform GCS on incarcerated individuals. Thus, the Court should hold NDOC in contempt for its failure to make every reasonable effort[4] to comply.

## II.      REPLY TO MEDICAL TREATMENT AND REFERRALS.

### A.      <u>Hormone Replacement Therapy.</u>

Defendants understate the severity of Dr. Marks' misconduct by arguing that "Dr. Marks had some ethical and medical concerns and differences with the Court order" and that "Dr. Marks was not willing to increase the dosage further [than 6 mg]." (ECF No. 120, pp. 2:28 – 3:3.) While it is heartening that Defendants' counsel "enlisted the assistance of Dr. Kenneth Williams," NDOC's Medical Director, after "it became clear that Dr. Marks was not willing to violate what he believed was his duty to his patient," and Dr. Williams subsequently increased Ms. Hundley's estradiol dosage to 8 mg and referred Ms. Hundley to an endocrinologist" (*id.*, p. 3:3-11), as argued below, that does not in any way absolve Dr. Marks of his failure to comply with the Court's order. And Defendants' claims that Dr. Marks was motivated by medical ethics are severely undermined not only by his hostile personal interactions with Ms. Hundley and failure to submit a declaration to explain his noncompliance with the Preliminary Injunction, but by the fact that Dr. Marks' medical license was summarily suspended on October 14, 2025. (*See* **Exhibit 16**.)

---

[4] *See Picozzi*, 2024 WL 4349453, *6 (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)) (Defendants did not substantially comply where they failed to make "every reasonable effort" to assure compliance with TRO).

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

As Defendants' own exhibits demonstrate, Ms. Hundley's blood estradiol levels have only increased to 112 pg / mL as of labs taken November 13, 2025. (ECF No. 120, p. 3:21-23.)[5] However, APRN Sanabia, by her own admission, is currently engaging in the same failure to provide medically necessary care as Dr. Marks by refusing to sufficiently increase Ms. Hundley's estradiol dosage (or method of administration) while claiming that "the current level of estradiol is within the current guidelines for transgender care." (*Id.*, p. 3:24-25; ECF No. 120-2, ¶ 9.) This does not reconcile with what is medically necessary[6]— or what this Court previously ordered Dr. Marks provide. (ECF No. 116, p. 23:7-9.)

Finally, providing Ms. Hundley a daily dose of progesterone, while potentially beneficial in treating Ms. Hundley's gender dysphoria, will not, as Defendants imply, increase her blood estradiol levels. (ECF No. 120, p. 3:25-26.) Rather, as explained by Dr. Gorton, the administration of progesterone—which, upon information and belief, Ms. Hundley did not receive until over a month[7] after Dr. Gonzales[8] recommended them—will

[5] Again, despite Ms. Hundley's (and her counsel's) effort to access information about her treatment and NDOC's efforts to comply with the Preliminary Injunction, neither were informed of documentation regarding Ms. Hundley's examination by Dr. Gonzales (Defendants' Exhibits 2-3), Ms. Hundley's patient profile as of December 4, 2025 (Defendants' Exhibit 4), Ms. Hundley's lab results (Defendants' Exhibit 5), or a faxed request for surgical consultation sent to Western Surgical Group (Defendants' Exhibit 6) until they were submitted as exhibits to Defendants' Response. This further demonstrates Defendants' ongoing lack of cooperation and the necessity of contempt sanctions.

[6] As APRN Sanabia—like Dr. Marks—makes no representations as to her expertise regarding transgender care, this Court should—like it did in granting Ms. Hundley injunctive relief—credit the representations of Ms. Hundley's expert, Dr. Gorton, regarding treatment for gender dysphoria. (*See* ECF No. 116, pp. 13:6 - 15:3.)

[7] *See, e.g.*, ECF No. 119-16, ¶¶ 26-28. Upon information and belief, Ms. Hundley began receiving the progesterone on or about December 8, 2025.

[8] Also troubling, Dr. Gonzales misstates Ms. Hundley's desires regarding bottom surgery. (*See* Defendants' Exhibit 5, p. 1.) Notwithstanding this error, Ms. Hundley expressed her desire for GCS to Dr. Gonzales and continues to desire GCS—including but not limited to orchiectomy and vaginoplasty—as evidenced repeatedly in the instant matter. (*See, e.g.*, ECF No. 75-1, pp. 23-24 (GCS referral is an "urgent need that has been neglected for over a decade and should be promptly rectified"); ECF No. 75-10, ¶¶ 17-20 (Ms. Hundley's "GD symptoms cannot be fully abated absent GCS" and she has formally requested GCS since 2015).) Additionally, as one court recognized—crediting Dr. Gorton's expert opinion—upon receiving GCS, Ms. Hundley's risks related to HRT would decrease "because the removal of

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

not increase Ms. Hundley's blood estradiol levels above the court-mandated level of 150 pg/mL. (*See* ECF No. 119-17, ¶¶ 13-14.)

### B.    Gender Confirming Surgery Referrals.

Defendants admit that Ms. Hundley "has not been referred to a surgeon to evaluate gender affirming surgery" (ECF No. 120, p. 4:3-4) but outline their three efforts to obtain such a referral, two of which have been denied and one of which has not been responded to. (*Id.*, p. 4:4-12.) While Ms. Hundley is mindful that NDOC cannot force providers to perform surgery, given the extreme distress Ms. Hundley's GD causes her, GCS should not be considered "elective" or "non-life threatening if delayed." (*Id.*, p. 4:4-12.) Indeed, even Dr. Marks recommended that Ms. Hundley receive GCS. (*See* ECF No. 116, p. 5:23-25.)

Defendants make no showing that they have made any other overtures to any other providers of GCS, nor any reason for failing to do so. Defendants are unclear regarding the procedure they must undertake in attempting to obtain a referral. For instance, Defendants claim that faxing a referral to John Brosious of Western Surgical Group required some sort of NDOC authorization. (ECF No. 120, p. 4:5-6 (citing Defendants' Exhibit 6, p. 4).) However, Defendants do not explain the facts underlying this alleged authorization process, such as which officials provided the authorization, or whether such an authorization process needs to be repeated for each individual referral. Indeed, Defendants are silent as to whether the referrals to Vegas Plastic Surgery or UNLV General Surgery required authorization, and are silent as to how they conveyed these referrals (*e.g.*, via fax, email, phone, etc.).

There is no shortage of GCS providers in Northern California—most of which are geographically closer to Lovelock Correctional Center than UNLV General Surgery or Vegas Plastic Surgery. For instance, Ms. Hundley's preferred surgeon, Dr. Marci L. Bowers, performs GCS in Burlingame, California.[9] In addition to Dr. Bowers' practice, simple

---

her testosterone-producing male genitalia would reduce the need for the hormones[.]" *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1173 (N.D. Cal. 2015), *appeal dismissed and remanded*, 802 F.3d 1090 (9th Cir. 2015)).

[9] *See* https://marcibowers.com/blog/our-medical-centers/

McLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

4

internet searches reveal several GCS providers in Northern California.[10] Further, NDOC cannot show impossibility where Plaintiff kept asking for who they had reached out to and offered to assist once that information was provided[11], but NDOC just ignored Plaintiff and the terns of the Order.

## III.     LEGAL ARGUMENT

Rather than address the merits of the Motion, Defendants reiterate the same failed arguments that the Court rejected in sustaining Ms. Hundley's objections to Magistrate Judge Denney's Report and Recommendation and granting Ms. Hundley's Motion for Preliminary Injunction. (*Compare* ECF No. 120, pp. 5:5 – 6:9 *with* ECF No. 81, pp. 8:1 – 9:4.) However, this is not a motion for reconsideration; the Court has issued its Order and the only question before the Court is whether Defendants have complied.

Defendants have not complied, and their effort to relitigate and ignore the Preliminary Injunction demonstrate that contempt is well-warranted. Nor have Defendants met their burden of asserting a sufficient justification for noncompliance, supported by specific evidence which shows "'categorically and in detail' why they are unable to comply." *Cap. Pure Assets, Ltd. v. CC Tech. Corp.*, No. 2:24-CV-00680-NJK, 2025 WL 1362668, at \*2 (D. Nev. Apr. 29, 2025) (quoting *Coleman v. Newsom*, 131 F.4th 948, 959-60 (9th Cir. 2025)); *see also Picozzi*, 2024 WL 4349453, \*2 (quoting *N.L.R.B. v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973)). At most, Defendants have implied that "compliance would be difficult or expensive" but have not met their burden of establishing

---

[10] *See, e.g.*, https://www.sacgender.org/health-resources/surgeons-and-gynecologists (listing ten surgeons and gynecologists in the "Sutter Gender Identity Support Group," of which six claim to perform GCS and are located in Northern California); https://alignsurgical.com/vaginoplasty/ (San Francisco and Los Angeles); https://www.mozaiccare.net/mtf-surgery (San Francisco); https://transcare.ucsf.edu/genital-surgical-procedures-vaginoplasty-orchietcomy-and-phalloplasty (San Francisco); https://cranects.com/vaginoplasty/ (San Francisco); https://www.artsurgical.net/transgender-vaginoplasty (San Francisco); https://www.junsurgical.com/contact (Atherton); https://www.77plasticsurgery.com/services/vaginoplasty/ (San Francisco); https://www.genderconfirmation.com/team/dr-ellie-ley/ (San Francisco); https://med.stanford.edu/obgyn/divisions/gyn/transgender_surgery.html (Palo Alto).

[11] *See* ECF No. 119-18, ¶¶ 5-9.

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

that compliance is "factually impossible." *Cap. Pure Assets, Ltd.*, 2025 WL 1362668, *2. And—assuming, *arguendo*, that such a showing could be sufficient in light of the above precedent—Defendants have not even alleged that its noncompliance was due to mere "oversight." *Cf. Pedersen v. Corizon Health Inc.*, No. CV 18-00513-TUC-JGZ, 2019 WL 13234893, at *2–3 (D. Ariz. Aug. 12, 2019) (concluding that Defendant made "insufficient effort" to schedule neurology appointment for inmate within court-mandated deadline and admonishing Defendant that "greater care should be taken in responding to Court orders," but declining to hold Defendant in contempt because its deficiencies were "due to oversight"). Thus, the Court should exercise its wide discretion[12] and issue contempt sanctions against Dr. Marks, and against NDOC as well.

### A.    <u>Dr. Marks Should Be Held in Contempt.</u>

Defendants' Response makes no arguments that Dr. Marks should not be held in contempt, and thus Dr. Marks concedes that he should be held in contempt. *See*, *e.g.*, *Griffin v. City of Lake Elsinore*, No. 2:17-cv-00730-KJD-VCF, 2017 U.S. Dist. LEXIS 101032, 2017 WL 2817884, at *2 (D. Nev. June 28, 2017) (citing *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006)) ("By failing to address arguments in an opposition, a party effectively concedes a claim . . . ."); *see also* LR 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion.").

Additionally, Defendants make no factual argument regarding how "outside providers" have impeded their ability to provide Ms. Hundley adequate estradiol dosages. Indeed, the justification provided for the failure to provide Ms. Hundley adequate estradiol dosages is based solely on the opinions of Dr. Marks (or APRN Sanabia), which of course cannot supersede the Court's clear order. *See Maness v. Meyers*, 419 U.S. 449, 458 (1975)

---

[12] "A district court enjoys 'wide latitude in making a determination of whether there has been a contemptuous defiance of its own orders.'" *Religious Tech. Ctr. v. Henson*, 229 F.3d 1158, at *1 (9th Cir. 2000) (quoting *Neebars, Inc. v. Long Bar Grinding, Inc.*, 438 F.2d 47, 48 (9th Cir. 1971)).

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly."); *see also Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-CV-06370-EJD, 2020 WL 3617907, at \*3 (N.D. Cal. July 2, 2020) (quoting *United States v. Montgomery Glob. Advisors V LLC*, No. C-04-00733EDL, 2006 WL 950102, at \*2 (N.D. Cal. Mar. 2, 2006)) ("It is well-settled that a court's contempt power extends to non-parties who have notice of the court's order and the responsibility to comply with it.").

Accordingly, this Court should hold Dr. Marks in contempt and determine appropriate sanctions, including but not limited to attorney's fees, costs, and damages to Ms. Hundley.

## B.     Defendant NDOC Should Be Held in Contempt.

The only argument that NDOC makes against holding them in contempt for failing to obtain a referral for GCS is that "the delays in care have been with outside providers, whom NDOC does not control." (ECF No. 120, p. 6:11-12.) However, as noted above, NDOC has only made three inquiries over the last three months, despite the ease with which GCS providers can be found via simple internet searches. And, again, NDOC failed to provide requested information regarding their efforts despite Plaintiff's repeated efforts to get that information so her counsel and expert could assist.

Simply put—absent evidence that the process for sending these referrals is much more onerous than faxing or emailing the same document to different providers—NDOC plainly did not perform "all reasonable steps within [its] power to ensure compliance" with the Court's Order by only reaching out to three surgeons, which merits a finding of contempt. *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992).

Nothing in Defendants' Response explains how making more than three attempts to obtain a referral is unreasonable, much less an impossible burden. Defendants do not explain the policies and procedures for obtaining authorization to send a referral for GCS. Defendants do not indicate that authorization is necessary for each referral sent to each potential GCS provider. Defendants do not indicate how they find potential GCS providers or how they decide which surgeons to send referrals to. Defendants' response falls far short

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

of demonstrating that it was factually impossible to obtain a GCS referral for Ms. Hundley in the three months after the Court ordered it to do so, meriting contempt. *See Cap. Pure Assets, Ltd*, 2025 WL 1362668, *2. Ms. Hundley has therefore established contempt by clear and convincing evidence, and this Court should permit Ms. Hundley to submit a statement of relevant damages and attorney's fees and costs to determine appropriate sanctions.

## IV. CONCLUSION

Ms. Hundley recognizes that the Preliminary Injunction has now expired[13] under the PLRA, but that does not change that the Court can and should compensate Ms. Hundley for Defendants' blatant violations of the Preliminary Injunction when it was in effect.[14] It is notable that Plaintiff believed Defendants' representations that they would comply with the Preliminary Injunction and agreed to stay the case to allow the parties to focus on solutions and possible resolution (*see* ECF No. 118, pp. 1:20 – 2:7) only to have Defendants essentially ignore the Order and Ms. Hundley's efforts to obtain information regarding compliance.

The Court should now send a clear message that Defendants were not—and are not—free to ignore the Preliminary Injunction and continue to harm Ms. Hundley by refusing to take the necessary steps towards medically necessary care. Clear and convincing evidence demonstrates that Defendants willfully chose to ignore the injunction, and Defendants have failed to provide any adequate reasons for, or defenses of, their willful disobedience. Thus, this Court should grant Ms. Hundley's motion, hold Dr. Marks and NDOC in contempt, and determine appropriate sanctions after permitting Ms. Hundley to submit a statement of relevant damages and attorney's fees and costs.

/ / /

/ / /

/ / /

---

[13] *See* 18 U.S.C. § 3626(a)(2) (preliminary injunctions regarding prison conditions expire after 90 days). Ms. Hundley reserves the right to move for injunctive relief in the future.

[14] *See Picozzi*, 2024 WL 4349453, *7-9 (imposing compensatory civil contempt sanctions for violations of TRO that expired during pendency of plaintiff's contempt motion).

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

DATED this 11th day of December, 2025.

*/s/ Leo S. Wolpert*
MARGARET A. MCLETCHIE, Nevada Bar No. 10931
LEO S. WOLPERT, Nevada Bar No. 12658
602 South Tenth Street
Las Vegas, NV 89101
Telephone: (702) 728-5300; Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Plaintiff Jamee Deirdre Hundley*

| INDEX OF EXHIBITS TO MOTION FOR AN ORDER TO SHOW CAUSE AS TO WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMP | |
|---|---|
| **EX.** | **DESCRIPTION** |
| 16 | October 14, 2025, Board of Medical Examiners of the State of Nevada, Order of Summary Suspension of Defendant Dana Marks |
| | |

9